USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 97-1398 SHMUEL DAVID, Petitioner, Appellant, v. UNITED STATES OF AMERICA, Respondent, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nancy Gertner, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _________________________ Peter Goldberger, with whom Pamela A. Wilk was on brief, for ________________ ______________ appellant. Robert L. Peabody, Assistant United States Attorney, with __________________ whom Donald K. Stern, United States Attorney, was on brief, for ________________ appellee. _________________________ January 27, 1998 _________________________ SELYA, Circuit Judge. Some four years ago, petitioner- SELYA, Circuit Judge. _____________ appellant Shmuel David filed a motion for post-conviction relief pursuant to 28 U.S.C. 2255 (1994).1 The district court eventually denied the petition without holding an evidentiary hearing. David appeals. We affirm. I. I. __ Background Background __________ On direct appeal, we described the petitioner's case as "involv[ing] a spider web of drug dealing, with David at the web's center," United States v. David, 940 F.2d 722, 726 (1st _____________ _____ Cir. 1991) (David I), and we proceeded to affirm his convictions _______ on a myriad of charges. Inasmuch as the predicate facts are set out at length in that opinion, we offer only a pr cis of those events to set the stage for the instant appeal. In David I, the government charged that, during 1986, _______ 1987, and 1988, David, thirteen codefendants, and various other persons engaged in extensive cocaine trafficking. Mirroring the prosecution's theory that a shift from domestic to foreign suppliers transmogrified the operation, the indictment described  ____________________ 1Congress subsequently enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (codified in scattered sections of 28 U.S.C.). The new law took effect on April 24, 1996. The Supreme Court has determined, in general, that AEDPA does not apply to habeas petitions that were pending on AEDPA's effective date. See Lindh ___ _____ v. Murphy, 117 S. Ct. 2059, 2067-68 (1997) (discussing amendments ______ to habeas procedures in cases brought under 28 U.S.C. 2254); see also Martin v. Bissonette, 118 F.3d 871, 874 (1st Cir. 1997) ___ ____ ______ __________ (applying Lindh). We believe that this rationale applies to _____ section 2255 motions (which are, after all, a species of habeas petitions). Thus, we measure the petitioner's case against pre- AEDPA benchmarks. 2 two conspiracies: one beginning in 1986 and ending in March of 1988, and the other taking up where the first left off and ending later that year. Following a nine-week trial, a jury found the petitioner guilty on twenty-two counts, including charges that he: (a) engaged in a continuing criminal enterprise (CCE), see ___ 21 U.S.C. 848; (b) participated in both conspiracies, see 21 ___ U.S.C. 846; (c) possessed cocaine with intent to distribute on several occasions, see 21 U.S.C. 841(a)(1); and (d) facilitated ___ numerous drug transactions by using the telephone, see 21 U.S.C. ___ 843(b). At the disposition hearing, the district court, employing the January 1988 edition of the sentencing guidelines, grouped related offenses, see USSG 3D1.1(a); used available ___ drug-quantity evidence to fix a base offense level of 36, see ___ USSG 2D1.1; added two levels for possession of a firearm during the commission of an offense, see USSG 2D1.1(b); added four more ___ levels for the petitioner's leadership role, see USSG 3B1.1; and ___ subtracted two levels for acceptance of responsibility, see USSG ___ 3E1.1. In the end, the district court sentenced the petitioner within the computed guideline sentencing range, imposing a thirty-year incarcerative term on the CCE and various "grouped" possession counts and shorter periods of immurement on the remaining charges. The court designated all the sentences to run concurrently. Represented by new counsel, David appealed. We vacated the conspiracy convictions as violative of the multiple 3 punishments prong of the Double Jeopardy Clause, given the conviction and sentence on the encompassing CCE count. See David ___ _____ I, 940 F.2d at 738 (citing United States v. Rivera-Martinez, 931 _ _____________ _______________ F.2d 148, 152-53 (1st Cir. 1991)). In all other respects, we affirmed the convictions and the corresponding sentences. On January 7, 1994, while still incarcerated, the petitioner retained fresh counsel and filed a motion for post- conviction relief in the district court. Judge Gertner assumed responsibility for the motion in place of the late Judge McNaught, who had presided over the trial and had imposed sentence. She ultimately denied it on January 2, 1997, but did not deign to hold an evidentiary hearing. Without missing a beat, the petitioner changed counsel again. His new lawyers filed a motion for reconsideration on February 26, 1997, which Judge Gertner also denied. The petitioner appeals solely from the original denial of post-conviction relief. II. II. ___ Analysis Analysis ________ The petitioner advanced three claims in the court below. Two of these claims related to the propriety of the sentencing calculations; one questioned the firearms enhancement and the second questioned the upward adjustment for role in the offense. The remaining claim posited ineffective assistance of trial counsel, stemming not only from an alleged failure to raise this pair of sentencing objections, but also from an alleged failure promptly to relay a potentially favorable plea bargain to 4 the petitioner. On appeal, David has not continued his campaign against the role-in-the-offense adjustment, and we deem that challenge abandoned. See, e.g., United States v. Zannino, 895 ___ ____ ______________ _______ F.2d 1, 17 (1st Cir. 1990). He does, however, renew the other two claims. After a brief introduction, we address each of them. A. A. __ Introduction Introduction ____________ Section 2255 is not a surrogate for a direct appeal. Rather, the statute provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack. See Hill v. ___ ____ United States, 368 U.S. 424, 426-27 (1962) (construing statute). ______________ The catch-all fourth category includes only assignments of error that reveal "fundamental defect[s]" which, if uncorrected, will "result[] in a complete miscarriage of justice," or irregularities that are "inconsistent with the rudimentary demands of fair procedure." Id. at 428. In other words, apart ___ from claims of constitutional or jurisdictional nature, a cognizable section 2255 claim must reveal "exceptional circumstances" that make the need for redress evident. See id. ___ ___ The burden is on the petitioner to make out a case for section 2255 relief. See Mack v. United States, 635 F.2d 20, 26-27 (1st ___ ____ ______________ Cir. 1980). B. B. __ 5 The Firearms Enhancement The Firearms Enhancement ________________________ The petitioner asserts that, as of the date of disposition (August 1, 1989), the guidelines did not authorize the two-level sentence enhancement imposed by Judge McNaught for the use of a firearm an enhancement that tacked at least sixty- seven additional months onto David's sentence. This claim presents a bit of a moving target. In his section 2255 motion and in the court below, David asseverated that a two-level increase only could have materialized if it were authorized for the CCE conviction, and that the two-level firearms enhancement was unavailable because the applicable sentencing guideline, USSG 2D1.5, did not make reference to it. Having secured yet a fourth set of attorneys in the interim, the petitioner recast his argument in his motion for reconsideration, and now has come hard about. In this venue, he barely mentions section 2D1.5, but, rather, shapes his argument around USSG 2D1.1. Paying very little heed to the fact that he initially told the lower court that section 2D1.1 did not apply at all, he now maintains that section 2D1.1 is the correct focal point, but that it cannot support the enhancement. We approach this moving target with considerable caution. It is well established that a party may not unveil an argument in the court of appeals that he did not seasonably raise in the district court. See United States v. Slade, 980 F.2d 27, ___ ______________ _____ 30 (1st Cir. 1992); see also Singleton v. United States, 26 F.3d ___ ____ _________ _____________ 233, 240 (1st Cir. 1994) (invoking this principle in a section 6 2255 case); United States v. Mariano, 983 F.2d 1150, 1158 n.9 _____________ _______ (1st Cir. 1993) (invoking this principle in respect to sentencing issues). To apply the principle here, we must measure the petitioner's current argument against that limned in his section 2255 motion and advanced before Judge Gertner, not by reference to the theory that he belatedly surfaced in his request for reconsideration.2 See Barrett v. United States, 965 F.2d 1184, ___ _______ _____________ 1187 n.3 (1st Cir. 1992); Mackin v. City of Boston, 969 F.2d ______ _______________ 1273, 1278-79 (1st Cir. 1992); In re Sun Pipe Line Co., 831 F.2d _______________________ 22, 24 (1st Cir. 1987). Although the petitioner contends that the argument he makes today is merely a more sophisticated statement of a refrain contained in his section 2255 motion, that is plainly not the case. The two arguments are markedly different. Consequently, the newer version is by the boards. The petitioner correctly reminds us that an appellate court has discretionary power to override a forfeiture of this type. To justify deploying this seldom-used power, however, the newly emergent contention must be one that practically guarantees the appellant's success. See Slade, 980 F.2d at 31. Here, the ___ _____ forfeited argument is considerably less than robust. We explain briefly. The firearms enhancement about which the petitioner  ____________________ 2Even were we disposed to consider the argument advanced in the petitioner's untimely motion for reconsideration, we could not do so because the petitioner has not appealed from the denial of that motion. See Barrett v. United States, 965 F.2d 1184, ___ _______ _____________ 1188 (1st Cir. 1992). 7 complains arose out of a discrete set of facts. In June 1987, a drug courier by the name of Filin, employed by David and his confederates, tried to purloin a shipment of cocaine by faking a robbery. The petitioner saw through the charade and later threatened Filin at gunpoint in an attempt to coerce a confession. Under the sentencing regime imposed by the guidelines, the law in effect on the date of the disposition hearing governs, absent ex post facto concerns. See United States v. Harotunian, __ ____ _____ ___ _____________ __________ 920 F.2d 1040, 1041-42 (1st Cir. 1990). Hewing to this line, the government defends the enhancement by pointing to the version of USSG 2D1.1(b)(1) that took effect on January 15, 1988. That guideline provided for a two-level upward adjustment if a firearm "was possessed during commission of the offense." USSG 2D1.1(b)(1). The government concedes that "the offense" must be an offense to which the guidelines attached, thus restricting the enhancement in this case to the two drug distribution counts that transpired in 1988, namely, counts 15 and 16.3 Notwithstanding this concession, the government posits that the phrase "during commission of the offense" requires reference to the "relevant conduct" guideline, which in its 1988 iteration indicated (with certain exceptions not germane here) that an "offense" generally  ____________________ 3These counts, each of which charged a violation of 21 U.S.C. 841(a)(1), are the only post-guidelines counts of conviction that are legally capable of supporting the firearms enhancement. The CCE sentencing paradigm did not provide for such an enhancement, and the two conspiracy convictions have been vacated. 8 is deemed to include "all acts . . . committed or aided and abetted by the defendant . . . that occurred during the commission of the offense of conviction," USSG 1B1.3(a)(1), and that, with respect to "grouped" offenses, see USSG 3D1.2(d), an ___ "offense" generally is deemed to include all "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction," USSG 1B1.3(a)(2). Since the Filin episode was part of the same course of conduct or common scheme or plan as the vignettes on which counts 15 and 16 were premised, the government's thesis runs, the petitioner possessed the gun "during commission of the offense." The petitioner's counter-argument is somewhat more convoluted. As a general matter, he maintains that the government defines "the offense" too broadly and that the phrase's scope is restricted to the specific offense(s) of conviction and does not include "relevant conduct." On this basis, he argues, his proven use of a firearm could not support the enhancement because that use did not occur in the course of an offense of conviction to which the guidelines attached. Indeed, he adds, since the gun use took place before the effective date of the guidelines, it could not possibly have occurred as part of such an offense. After studying the guideline provision, we reject the petitioner's hypothesis. We conclude instead that the phrase "the offense," fairly read, bears the broader interpretation ascribed to it by the government and the district court. Our 9 conclusion is grounded in the language, structure, and theory of the sentencing guidelines, and it is reinforced by an amendment that the Sentencing Commission adopted subsequent to the events at issue here. See USSG App. C, Amend. 394 (Nov. 1991). That ___ amendment deleted the "during commission of the offense" language from section 2D1.1(b)(1) and thus confirmed the government's interpretation of the guideline as extending to relevant conduct. We do not embrace the petitioner's suggestion that Amendment 394 is inapposite. The general rule is that revisionary amendments to the guidelines that is, amendments which change the law in a substantive way cannot be applied retroactively by a sentencing court to a defendant's disadvantage. See United States v. Rostoff, 53 F.3d 398, 406 ___ ______________ _______ (1st Cir. 1995). By contrast, clarifying amendments that is, amendments which do not change the law, but which merely elucidate its intended meaning can be freely used by sentencing (or sentence-reviewing) courts as interpretive aids, prospectively or retrospectively. See Isabel v. United States, ___ ______ _____________ 980 F.2d 60, 62 (1st Cir. 1992); United States v. Ruiz-Batista, ______________ ____________ 956 F.2d 351, 353-54 (1st Cir. 1992). When determining whether a guideline amendment is revisionary as opposed to clarifying, an inquiring court must accord substantial respect to the Sentencing Commission's view on the subject. See Isabel, 980 F.2d at 62. ___ ______ In effecting Amendment 394, the Sentencing Commission stated that "[t]his amendment clarifies that the provisions of 1B1.3(a)(2) [incorporating as relevant conduct all acts which were part of 10 the same course of conduct as the offense of conviction] apply to the adjustments in 2D1.1(b)(1)." The Commission's characterization of Amendment 394 appears apt: it is designed to disambiguate the guideline provision and thereby mitigate any confusion caused by the original wording. That is game, set, and match. Because Amendment 394 worked no substantive change in preexistent law, a sentencing or reviewing court may apply it retroactively. See United States v. ___ _____________ LaCroix, 28 F.3d 223, 227 n.4 (1st Cir. 1994); United States v. _______ _____________ Valencia-Lucena, 988 F.2d 228, 234 n.4 (1st Cir. 1993); see also _______________ ___ ____ USSG 1B1.11(b)(2) (Nov. 1993). We do so here. The Commission's language could not be more straightforward. Amendment 394 makes it plain that the "relevant conduct" provisions (such as section 1B1.3(a)(2)) apply to the adjustments in section 2D1.1(b)(1) (such as the firearms enhancement). Accordingly, Amendment 394 fully validates the district court's use of a "relevant conduct" approach to the firearms enhancement. The petitioner's fallback position is no more persuasive. He contends that, even if the sentencing guidelines permit the enhancement when a firearm was used during pre- guidelines conduct "relevant" to a post-guidelines offense of conviction, his gun use does not so qualify because the Filin incident (which took place in 1987) was not part of the same course of conduct, common scheme, or plan that underlays counts 15 and 16 (both of which focus on events that occurred in April 11 of 1988). This contention depends on an artificial distinction. The petitioner notes that his use of a firearm occurred within the time frame of the so-called first conspiracy, whereas the conduct underlying the two post-guidelines drug distribution counts occurred within the time frame of the so-called second conspiracy. Based on this chronology, he theorizes that the enhancing conduct the gun use cannot be "relevant" to the offenses of conviction. The fallacy in this theory is that "a course of conduct or common scheme or plan," as that phrase is used in the sentencing guidelines, is broader than, rather than coterminous with, the definition of a "conspiracy" as that term of art is used in the overall criminal law. See United States v. Wood, 924 ___ _____________ ____ F.2d 399, 403 (1st Cir. 1991); see also United States v. Spence, ___ ____ _____________ ______ 125 F.3d 1192, 1195 (8th Cir. 1997); United States v. Boney, 977 _____________ _____ F.2d 624, 635 (D.C. Cir. 1992). Thus, whether or not enveloped within the same conspiracy, offenses may qualify as occurring within the same course of conduct as long as they are related sufficiently to allow a rational factfinder to conclude that "they are part of . . . [an] ongoing series of offenses." USSG 1B1.3(a), comment. (n.9(B)). In the same vein, "[f]or two or more offenses to constitute part of a common scheme or plan," they only need to "be substantially connected to each other by at least one common factor, such as . . . accomplices, [or] common purpose. . . ." USSG 1B1.3(a), comment. (n. 9(A)). 12 This dichotomy makes a world of difference. Although the petitioner's drug trafficking resulted in two separate charged conspiracies, the framing of the charges cannot obscure the fact that, throughout the cocaine trafficking described in the indictment, the petitioner and his principal accomplices remained at the center of an ongoing enterprise devoted to a single purpose.4 The shift in the source of supply permitted the prosecutor to divide the enterprise into two segments and to charge some defendants accordingly, but the petitioner never deviated from his main business: the acquisition, distribution, and sale of cocaine in a specific region. Because the petitioner's activities during 1986, 1987, and 1988 constituted an ongoing series of offenses, the district court did not err in imposing the firearms enhancement. C. C. __ Ineffective Assistance of Counsel Ineffective Assistance of Counsel _________________________________ Insofar as the petitioner's ineffective assistance of counsel claim relates to the sentencing phase, it is impuissant. The petitioner received an appropriate sentence, see supra Part ___ _____ II(B), and, absent any prejudice, an ineffective assistance claim cannot prosper. See Scarpa v. Dubois, 38 F.3d 1, 8-9 (1st Cir. ___ ______ ______ 1994). We turn, then, to a consideration of the remaining tine of the petitioner's claim: that he received substandard assistance because his trial counsel failed promptly to  ____________________ 4The David I record discloses that at least three other _______ ringleaders (Yehuda Yarden, Joseph Zalmanovich, and Mordechai Mizrahi) were involved with the petitioner in both conspiracies. 13 communicate a favorable plea bargain to him. The genesis of this claim is as follows. In his motion (or, more accurately, in a memorandum accompanying it), the petitioner averred that he learned at some indeterminate time of a favorable plea offer extended by the government but not communicated to him until after its withdrawal. Had the offer been made known to him, the petitioner ruminates, he "likely" would have accepted it. The averment contains no specifics, e.g., who made the proposal, when it was tendered, what conditions were attached to it, why it was withdrawn, or how the petitioner came to hear of it.5 Judge Gertner dismissed the unsupported allegation out of hand. On appeal, the petitioner argues only that the judge erred in brushing aside the allegation without a hearing. We review the district court's denial of an evidentiary hearing for abuse of discretion. See United States v. Garcia, 954 F.2d 12, ___ _____________ ______ 19 (1st Cir. 1992). A prisoner who invokes section 2255 is not entitled to an evidentiary hearing as a matter of right. See United States ___ ______________ v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Even if a hearing ______ is requested, a district court properly may forgo it when (1) the motion is inadequate on its face, or (2) the movant's  ____________________ 5In his papers, the petitioner merely asserted that he "later learned that during pre-trial period the Government made a plea offer . . . in return for a sentence of 19 years and 6 months. Counsel failed to adequately communicate this offer . . . until the offer had been withdrawn. [I]n all likelihood . . . [he] would have accepted said plea offer." 14 allegations, even if true, do not entitle him to relief, or (3) the movant's allegations "need not be accepted as true because they state conclusions instead of facts, contradict the record, or are `inherently incredible.'" Id. at 225-26 (citation ___ omitted); see also Rule 4(b), Rules Governing Section 2255 ___ ____ Proceedings. To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings. A representative case is Machibroda v. United States, 368 __________ _____________ U.S. 487 (1962), in which the petitioner's section 2255 motion alleged that his guilty plea resulted from an unkept prosecutorial promise. After the trial court dismissed the motion without an evidentiary hearing and the court of appeals affirmed, the Supreme Court reversed, noting that "[t]he petitioner's motion and affidavit contain charges which are detailed and specific." Id. at 495. In a pithy passage that ___ possesses particular pertinence for present purposes, the Court cautioned that a habeas petitioner is not automatically entitled to a hearing and normally should not receive one if his allegations are "vague, conclusory, or palpably incredible." Id. ___ This is true, the Court wrote, even "if the record does not conclusively and expressly belie [the] claim." Id. ___ Inferior courts routinely have applied the Machibroda __________ standard in determining the need for evidentiary hearings on section 2255 motions. Allegations that are so evanescent or 15 bereft of detail that they cannot reasonably be investigated (and, thus, corroborated or disproved) do not warrant an evidentiary hearing. See Dalli v. United States, 491 F.2d 758, ___ _____ _____________ 761 (2d Cir. 1974) (holding that the district court supportably refused to convene an evidentiary hearing when the petitioner's allegations were "vague, indefinite and conclusory"); see also ___ ____ Amos v. Minnesota, 849 F.2d 1070, 1072 (8th Cir. 1988) (upholding ____ _________ the denial of an evidentiary hearing in a section 2254 case inasmuch as petitioner "offered only general allegations"). In this instance, the district court was not obliged to credit the petitioner's threadbare allusions to a phantom plea bargain. Who, what, when, where, and how details might have placed matters of ascertainable fact at issue and thus have bolstered the case for an evidentiary hearing, but none were forthcoming. To the contrary, the petitioner offered the district court no names, dates, places, or other details, even though such details presumably were within his ken. In the absence of any particulars, the lower court justifiably treated the petitioner's conclusory averments as mere buzznacking. The petitioner points to United States v. Rodriguez _____________ _________ Rodriguez, 929 F.2d 747 (1st Cir. 1991) (per curiam), as support _________ for his contention that, when a section 2255 motion alleges that defense counsel failed to inform the defendant of a plea offer, the district court must hold an evidentiary hearing. That case provides David with cold comfort, for the court there took pains to admonish petitioners that, in order to secure an evidentiary 16 hearing on such a claim, they must tender more than conclusory allegations. See id. at 752. Rodriguez, unlike David, "provided ___ ___ adequate factual specifications beyond bald speculation," and therefore merited an evidentiary hearing. Id. ___ To sum up, the petitioner has put forth less than the bare minimum that is necessary to warrant an evidentiary hearing. On this gossamer showing, the district court did not abuse its discretion in refusing to license a fishing expedition. III. III. ____ Conclusion Conclusion __________ We need go no further. The petitioner's sentencing arguments are procedurally defective and substantively infirm. By like token, his unparticularized claim that a phantom plea bargain lapsed for want of timely communication is much too vague to demand an evidentiary hearing. Hence, the court below did not err in rejecting David's section 2255 motion. Affirmed. Affirmed. ________ 17