Pedro Juan TAVARES, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. CIV.A. 00–11923–JLT.

United States District Court,
D. Massachusetts.

Dec. 28, 2001.

Pedro Juan Tavares, FCI Fort Dix, Fort Dix, NJ, Pro se.

Robert L. Peabody, United States Attorney's Office, Boston, for USA, Defendants.

## *ORDER*

TAURO, District Judge.

For the reasons in the August 2, 2001 Report and Recommendation [#21], Petitioner has failed to make a substantial showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253. Accordingly, Petitioner's Request for a Certificate of Appealability [#25] is DENIED.

IT IS SO ORDERED.

**REPORT AND RECOMMENDATION RE: MOTION TO VACATE, SET ASIDE, AND OR CORRECT SENTENCE PURSUANT TO TITLE 28 U.S.C. § 2255 (DOCKET ENTRY # 1) MEMORANDUM AND ORDER RE: MOTION TO AMEND THE PENDING SECTION 2255 UNDER RULE 15(A), FEDERAL RULE OF CIVIL PROCEDURE (DOCKET ENTRY # 5)**

BOWLER, United States Magistrate Judge.

The court referred the motion to vacate (Docket Entry # 1) and the motion to amend (Docket Entry # 5)[1] filed by petitioner Pedro Juan Tavares ("petitioner") in the above styled 28 U.S.C. § 2255 ("section 2255") proceeding to this court for a report and recommendation. The motion to vacate (Docket Entry # 1) and the motion to amend (Docket Entry # 5) are therefore ripe for review.

The motion to vacate alleges three grounds as a basis for vacating the conviction and sentence. First, petitioner submits that the government obstructed justice in violation of the Fifth Amendment by not allowing him to have the two quantities of heroin he was charged with selling tested by the independent chemical laboratory which petitioner identified in a motion for funds which the court allowed. Petitioner's second and third claims allege ineffective assistance of counsel in violation of the Sixth Amendment. Petitioner contends that counsel was ineffective because he: (1) failed to insist that the drugs be sent to the aforementioned independent

chemical laboratory, National Medical Services ("National Medical"), in Willow Grove, Pennsylvania; and (2) failed to conduct an independent chemical test of the drugs to determine the accuracy of the government's test.

Citing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the motion to amend complains that counts one, eight and nine of the Second Superseding Indictment[2] fail to contain the penalty statutes and fail to specify the drug quantity involved. Petitioner submits that he was never put on notice of the penalties for violating sections 841(a)(1) and 846.

An evidentiary hearing is not required. As discussed below, even accepting petitioner's nonconclusory statements of fact as true to the extent not contradicted by the record, petitioner is not entitled to relief. *See David v. United States*, 134 F.3d 470, 477 (1st Cir.1998) (setting forth evidentiary hearing standard in section 2255 proceeding); *United States v. McGill*, 11 F.3d 223, 225 (1st Cir.1993) ("court need not give weight to conclusory allegations"); *Myatt v. United States*, 875 F.2d 8, 11 (1st Cir.1989) (hearing not necessary if section 2255 motion "is 'conclusively refuted as to the alleged facts by the files and records of the case' "). Petitioner does not request an evidentiary hearing and fails in his burden to establish the need for such a hearing. *See United States v. McGill*, 11 F.3d at 225 (recognizing the petitioner bears burden of establishing need for evidentiary hearing in section 2255 proceeding).

---

**1.** The court initially denied the motion to amend as moot because the government failed to plead or otherwise defend against the section 2255 proceeding thereby resulting in a default judgment. (Docket Entry # 7). Thereafter, the court allowed the government's motion to remove the default, reinstated the motion to vacate and the motion to

amend and referred both motions to this court for a report and recommendation.

**2.** Although petitioner attaches a copy of the Superseding Indictment to the motion to amend, he pled guilty and was sentenced to the charges set forth in counts one, eight and nine of the Second Superseding Indictment.

## BACKGROUND [3]

On June 10, 1998, an 11 count Second Superseding Indictment issued against petitioner and various co-defendants. Petitioner is named in counts one, eight and nine. Count One charged petitioner with knowingly and intentionally conspiring to possess with the intent to distribute and to distribute heroin in violation of 21 U.S.C. § 841(a)(1) ("section 841(a)(1)") thereby violating 21 U.S.C. § 846. Count One also noticed the applicability of 21 U.S.C. § 841(b)(1)(B)(i) ("section 841(b)(1)(B)(i)"). Count Eight charged that on April 6, 1998, and Count Nine charged that on April 16, 1998, petitioner knowingly and intentionally distributed and possessed with the intent to distribute heroin in violation of section 841(a)(1).

Petitioner was represented by appointed counsel ("defense counsel"). He pleaded not guilty at the June 17, 1998 arraignment on the Second Superseding Indictment.

On June 7, 1999, defense counsel filed a motion requesting court authorization for the expenditure of $792 for an independent drug analysis on the drugs purchased from petitioner on April 6 and 16, 1998. *See* 18 U.S.C. § 3006A(e)(1). Petitioner's defense was that he never sold any heroin to the informant, Sarah Peral ("Peral"), on April 6 or 16, 1998. In particular, petitioner asserted that the seized substances did not contain heroin. (Docket Entry # 1).

On June 8, 1999, the court allowed the motion by endorsement. The motion noted that defense counsel intended to retain National Medical to test the substances if the motion was allowed. (Docket Entry # 129, Cr. No. 98–10046–JLT).

Defense counsel never sent the samples to National Medical for testing. Rather, K–Chem Laboratories ("K–Chem"), an independent chemical laboratory in Westford, Massachusetts, tested both samples on July 6, 1999.[4] According to K–Chem's report, both samples contained heroin. K–Chem's finding is consistent with two earlier tests (one on each sample) performed in June and July 1998 by forensic chemists at a government laboratory.

The two reports admittedly differ in the weight of the heroin. The government report notes a gross weight of 35.9 grams and a net weight of 9.3 grams for the sample sold on April 6, 1998. The K–Chem report, however, shows a gross weight of 34.04 grams for the larger bag and a gross weight of 8.7 grams for the smaller, interior bag with respect to sample described as 1B7. In the government report, 1B7 is the exhibit number of the sample sold on April 6, 1998.[5]

---

**3.** "A habeas application must rest on a foundation of factual allegations presented under oath, either in a verified petition or supporting affidavits." *United States v. LaBonte*, 70 F.3d 1396, 1413 (1st Cir.1995) (further noting that facts in unsworn memorandum "will not suffice"), *rev'd on other grounds*, 520 U.S. 751, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997); *accord United States v. Jordan*, 2000 WL 761766 at * 2 (D.Me. April 10, 2000). Facts are taken from the record in the underlying criminal proceeding, including the presentence report ("PSR") and the documents attached to the motion to vacate. Petitioner's affidavit (Docket Entry # 10, Attached Affidavit), does not address the merits of the ineffective assistance of counsel or obstruction of justice claims. Unsupported assertions in the motion are accepted as true only for purposes of showing that petitioner is not entitled to section 2255 relief.

**4.** According to petitioner, the government sent the substances to K–Chem without approval from the court or from petitioner. The government alleges that defense counsel and government counsel agreed to send the samples to an independent laboratory in the Boston area and thus agreed to send the samples to K–Chem. The record fails to contain any evidence that K–Chem was affiliated with the government or was not an independent laboratory.

**5.** The government report noted a low, 9% purity for heroin in the sample. The K–Chem

As to the sample petitioner sold on April 16, 1998, the government report notes a gross weight of 53.7 grams and a net weight of 25.0 grams. In contrast, the K–Chem report shows a gross weight of 48.21 grams for the large bag and 19.27 grams for the smaller, interior bag with respect to the sample identified as number two. These discrepancies in weight, however, did not change the base offense level because the government established related conduct, see U.S.S.G. § 1B1.3 (1998), involving 110.6 grams of heroin at the sentencing hearing.[6]

On September 21, 1999, petitioner pled guilty to counts one, eight and nine of the Second Superseding Indictment. The court accepted the plea and conducted the necessary colloquy. This timely pretrial change of plea and acceptance of responsibility resulted in a three point reduction in the base offense level. See U.S.S.G. § 3E1.1(a) & (b) (1998).

Prior to sentencing, the probation officer prepared the PSR which contains 25 objections by defense counsel. Defense counsel points out that the purity of the heroin sold by petitioner was relatively low in comparison to the purity levels of the sales by other co-defendants. See U.S.S.G. § 2D1.1, cmt. n. 9 (1998). Defense counsel also uncovers various inconsistencies in the

testimony of co-defendant Maria Garcia ("Garcia"), identified as a government informant, and weaknesses in certain transcribed telephone conversations between petitioner and Peral. Defense counsel additionally argues at length that petitioner should not be held responsible for the February 3, 1998 sale of 61.2 grams of heroin sold by Garcia to Peral and the February 25, 1998 sale of 49.4 grams of heroin sold by Garcia to Peral.[7] Finally, defense counsel attacks the criminal history category assigned petitioner by the probation officer.

The sentencing hearing took place on January 13, 2000. At the sentencing hearing as well as in the PSR, defense counsel took the position that petitioner should only be held responsible for the weight of the heroin which he sold directly to Peral on April 6 and 16, 1998. Defense counsel places the weight of this heroin at 34.3 grams.[8] He did not dispute the weight of the 34.3 grams either in the PSR or at the sentencing hearing.[9] Instead, he focused his strategy on attacking the probation officer's and the government's theory that the weights of the heroin involved in the February 3 and 25, 1998 sales should be included in calculating the base offense level as qualifying relevant conduct under U.S.S.G. § 1B1.3 (1998).

report did not include a percentage breakdown of the heroin contained in the sample.

6. Thus, even discounting the entire 34.3 (25.0 + 9.3) grams of heroin noted in the government report, the weight of the heroin still falls within the 100 to 400 range, thereby resulting in a base offense level of 26. See U.S.S.G. § 2D1.1(a)(c)(7) (1998). Under the grouping principles espoused in the Sentencing Guidelines, see U.S.S.G. § 2D1.1, cmt. n. 6 (1998); U.S.S.G. § 3D1.2, cmt. n. 3 (1998), petitioner would receive the same base offense level and no less than the minimum mandatory sentence even if counts eight and nine were dismissed and he was sentenced only on Count One.

7. These quantities are the subject of counts five and six of the Second Superseding Indictment.

8. Where, as here, petitioner pled guilty to one count of selling a certain amount of heroin on April 6 and another count of selling a certain amount of heroin on April 16, the quantities of the drugs in the different counts are grouped together. See U.S.S.G. § 2D1.1, cmt. n. 6 (1998); U.S.S.G. § 3D1.2, cmt. n. 3 (1998).

9. At the sentencing hearing, defense counsel stipulated to the weight of the samples as 25 and nine grams. (Docket Entry # 168, p. 61, Cr. No. 00–10046–JLT).

At the sentencing hearing, Garcia testified for the government. On direct examination, she described how she purchased heroin from petitioner and subsequently sold a portion to Peral on two occasions in January or February 1998. On cross examination, defense counsel attacked the inconsistencies in Garcia's testimony. In particular, he exposed how Garcia had previously told the government that she had acquired the heroin in one as opposed to two transactions from petitioner. In fact, on cross examination, Garcia admitted that, "Yes, I lied." (Docket Entry # 168, p. 53; Cr. No. 98–10046–JLT). Defense counsel additionally explored Garcia's use of a false name. He also uncovered a number of other occasions where her testimony on direct differed markedly from earlier statements she had given to the government.

## DISCUSSION

### I. *Section 2255 Review*

 Section 2255 "provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." *David v. United States,* 134 F.3d at 474 (citing *Hill v. United States,* 368 U.S. 424, 426–427, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). The fourth category "includes only assignments of error that reveal 'fundamental defects' which, if uncorrected, will 'result in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" *David v. United States,* 134 F.3d at 474 (internal brackets omitted). Stated otherwise, "apart from claims of

constitutional or jurisdictional nature, a cognizable section 2255 claim must reveal 'exceptional circumstances' that make the need for redress evident." *David v. United States,* 134 F.3d at 474. The petitioner bears the burden of establishing the need for section 2255 relief. *David v. United States,* 134 F.3d at 474.

### II. *Ineffective Assistance of Counsel Claims*

In the case at bar, petitioner fails to set forth a constitutional violation or otherwise demonstrate exceptional circumstances justifying section 2255 relief based on defense counsel's failure to send the samples to National Medical. Petitioner submits that defense counsel was ineffective because he allowed the FBI agent to send the samples to K–Chem as opposed to the laboratory, National Medical, "approved" by the court.[10] As a result, petitioner alleges that the test result was "the exact replica" of the test conducted by the government. Petitioner was prejudiced because he was deprived of an ability to present the defense that the samples did not contain heroin. (Docket Entry # 1).

Petitioner also fails to set forth a constitutional violation or otherwise demonstrate exceptional circumstances justifying section 2255 relief based on defense counsel's failure to send the samples to a third independent laboratory. Petitioner asserts that defense counsel "should have insisted on conducting" another independent test "after the government's result from K–Chem." (Docket Entry # 1). Petitioner continuously insisted to defense counsel to conduct a third test at an independent laboratory, but defense counsel

---

10. Contrary to petitioner's assertion, the court simply allowed the motion for funds. The motion did not seek approval of National Medical as a testing facility. Furthermore, the court's allowance of the motion did not require defense counsel to send the samples to National Medical.

did not send the samples to a third laboratory. (Docket Entry # 1).

■ The well established test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), governs Sixth Amendment ineffective assistance of counsel claims. To succeed under *Strickland*, petitioner must demonstrate that his attorney's performance was constitutionally deficient and concomitant prejudice. *United States v. McGill*, 11 F.3d 223, 226 (1st Cir.1993) (ineffective assistance of counsel claim in section 2255 proceeding); *accord Phoenix v. Matesanz*, 233 F.3d 77, 81 (1st Cir.2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). An attorney's performance is deficient where it is "so inferior as to be objectively unreasonable." *United States v. McGill*, 11 F.3d at 226. Thus, an attorney renders ineffective assistance where he fails to "raise an important, obvious defense without any imaginable strategic or tactical reasons for the omission." *Prou v. United States*, 199 F.3d 37, 48 (1st Cir.1999) (failure of attorney to raise government's untimely filing of information seeking sentence enhancement was deficient inasmuch as the claim "was a clear winner and presenting it would have risked nothing").

" 'Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Lopez–Nieves v. United States*, 917 F.2d 645, 649 (1st Cir.1990) (quoting *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. 2052). The Sixth Amendment guarantees proficient as opposed to perfect representation. *Prou v. United States*, 199 F.3d at 48.

■ With respect to both allegations of deficient performance, defense counsel was far from ineffective. He acted reasonably in arguing and focusing upon petitioner's involvement with the sales at issue in counts five and six of the Second Superseding Indictment in an attempt to reduce the base offense level for Count One. As evident from the transcript, defense counsel admirably attacked and discredited Garcia's testimony. The fact that defense counsel chose not to focus on the weights of the April 6 and 16, 1998 samples simply evidences that defense counsel reasonably believed the weights were adequately established. *See, e.g., United States v. Grizales*, 859 F.2d 442, 447 (7th Cir.1988) (denying appeal of section 841(a)(1) conviction on the basis of ineffective assistance of counsel regarding counsel's failure to challenge amount of cocaine involved in the transaction at issue because counsel "may well have believed [the weight] had been adequately established at trial"). It is more than reasonable for defense counsel to conclude that a third test would not have uncovered the evidence petitioner sought, i.e., the absence of any heroin in the two samples. The weaker link in the government's case was the relevant conduct argument. Defense counsel centered his attack on this weaker link and tactically decided to forgo challenging the government's strong showing that the April 6 and 16, 1998 samples contained heroin.

■ Under the prejudice prong, it is incumbent on petitioner to demonstrate " 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Phoenix v. Matesanz*, 233 F.3d at 81 (quoting *Williams v. Taylor*, 529 U.S. at 390, 120 S.Ct. 1495). For instance, the court in *United States v. Grizales*, 859 F.2d at 447, found no prejudice to the petitioner, in part, by reasoning that, "It was not necessary for the government to prove the precise weight of the

cocaine in order to make out a § 841(a)(1) violation."

■ Similarly, petitioner received the minimum mandatory sentence.[11] He qualified for that sentence irrespective of the exact weight of the April 6 and 16, 1998 samples because the government established relevant conduct of an amount of heroin in excess of 100 grams thereby triggering the base offense level of 26 points. *See* U.S.S.G. § 2D1.1(7) (1998). In addition, even if defense counsel had sent the samples to a third laboratory or to National Medical, it is highly unlikely that such testing would have shown no heroin in the samples. Two tests, one done by a government laboratory and the second done by an independent laboratory, both evidenced the presence of heroin. *See Odle v. Calderon,* 919 F.Supp. 1367, 1388 (N.D.Cal.1996) (finding no prejudice and rejecting ineffective assistance of counsel claim based on attorney's failure to order and present independent drug and alcohol level tests), *rev'd and remanded on other grounds,* 238 F.3d 1084 (9th Cir. 2001); *see generally United States v. Hoyle,* 237 F.3d 1, 8 (1st Cir.2001) (noting lack of any basis under *Strickland* "for believing that the [sentencing] result would have been different if a downward departure had been sought" by the petitioner's attorney), *petition for cert. filed,* (April 16, 2001) (No. 00–9476).

In sum, petitioner fails to show both defective performance and prejudice with respect to the two alleged deficiencies of defense counsel. Section 2255 relief is therefore not available due to a violation of the Sixth Amendment.

### III. *Obstruction of Justice/Prosecutorial Misconduct Claim*

■ Petitioner also contends that the government obstructed justice. He submits that he was denied the right to present the defense that the samples did not contain heroin when the prosecutor and the FBI agent decided to send the samples to K–Chem instead of National Medical. Again, petitioner fails to make the necessary showing of a constitutional violation or otherwise demonstrate exceptional circumstances justifying section 2255 relief.

Construed as an allegation of prosecutorial misconduct, there is no indication that the prosecutor's conduct violated the Due Process Clause. *See generally Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) ("touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). It is true that "the constitutional right to present a meaningful defense includes access to evidence which is material to guilt or punishment." *Henry v. Page,* 223 F.3d 477, 480 (7th Cir.2000), *cert. denied,* __U.S.__, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001). The prosecutor, however, did not prevent petitioner from presenting a meaningful and effective defense by sending the samples to K–Chem. There is no showing that National Medical's testing would fail to detect heroin. There is also no showing that K–Chem is affiliated with the government or that it is not an independent facility similar to National Medical. The conduct at issue was not egregious or constitutionally improper.

11. The safety valve provision of U.S.S.G. § 5C1.2 (1998) would not apply because, as stated by the government in the sentencing memorandum and by the probation officer in the PSR, there was no plea agreement. It is therefore unlikely that petitioner provided the government all information and evidence he possessed regarding the conspiracy within the meaning of U.S.S.G. § 5C1.2(5) (1998). The PSR also makes no mention of U.S.S.G. § 5C1.2 (1998).

## IV. *Apprendi Claim*

Petitioner seeks leave to amend the petition to include a claim that the Second Superseding Indictment was void because it failed to contain the penalty provisions of the relevant statutes and the amount of the heroin involved. Relying on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), petitioner argues that he was entitled to know both the amount of the heroin charged and the maximum sentence for the proscribed conduct. Notwithstanding his guilty plea, petitioner therefore submits that the Second Superseding Indictment contained a "defect of Constitutional dimension"[12] because it failed to set forth the essential elements of the charged offense. (Docket Entry # 5).

■ Rule 15(a), Fed.R.Civ.P., generally applies to section 2255 proceedings. *See United States v. Barrett*, 178 F.3d 34, 45 (1st Cir.1999) (noting availability of motion to amend under Rule 15 in section 2255 proceeding), *cert. denied*, 528 U.S. 1176, 120 S.Ct. 1208, 145 L.Ed.2d 1110 (2000); Rule 12, 28 U.S.C. fol. § 2255 (court may apply Federal Rules of Civil Procedure if it deems appropriate where "no procedure is specifically prescribed in these rules"); 28 U.S.C. § 2242 (applications for habeas corpus may be amended "as provided in the rules of procedure applicable to civil actions"). Under Rule 15(a), "A party may amend a pleading at any time before a responsive pleading is served." *Willis v. Collins*, 989 F.2d 187, 189 (5th Cir.1993)

(section 2254 proceeding applying Rule 15(a)). After service of a responsive pleading, Rule 15(a) requires leave of court to amend a petition. *See, e.g., Clemmons v. Delo*, 177 F.3d 680, 685 (8th Cir.) (requiring leave of court under Rule 15(a) in section 2254 proceeding), *cert. denied*, 528 U.S. 1011, 120 S.Ct. 512, 145 L.Ed.2d 396 (1999); *Smith v. Angelone*, 111 F.3d 1126, 1133 (4th Cir.1997) (same); *Douglas v. Walker*, 2000 WL 943509 at * 1 (S.D.N.Y. July 7, 2000). Under Rule 15(a), " 'In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant' " as well as the " 'futility of the amendment,' " leave to amend the petition should be freely given. *Douglas v. Walker*, 2000 WL 943509 at * 1 (S.D.N.Y. July 7, 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), in the course of denying amendment in habeas proceeding as futile).

Petitioner filed the motion to amend before the government filed its answer. Petitioner's filing therefore "served as a timely amendment to his initial petition."[13] *Willis v. Collins*, 989 F.2d at 189. Nevertheless, petitioner fails to set forth a constitutional violation or otherwise demonstrate exceptional circumstances justifying section 2255 relief based on the alleged deficiencies of the Second Superseding Indictment.

■ As an initial matter, petitioner failed to raise the present argument earlier.[14] As a first 2255 motion, petitioner

---

12. On direct appeal indictment errors under *Apprendi* are subject to harmless error analysis. *See United States v. Wilkes*, 130 F.Supp.2d 222, 234–238 (discussing *United States v. Mojica–Baez*, 229 F.3d 292 (1st Cir. 2000), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2215, 150 L.Ed.2d 209 (2001)).

13. In any event, to the extent the motion requires leave of court, the merits are futile for reasons stated *infra*.

14. Petitioner did not seek a more particularized statement of the amount of heroin and the statutory penalty in the Second Superseding Indictment in the discovery motion presented to this court (Docket Entry # 64, Cr. No. 98–10046–JLT).

must "meet the cause and prejudice standard" where, as here, he "presents a claim not made earlier." *Sustache–Rivera v. United States,* 221 F.3d 8, 17 (1st Cir. 2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1364, 149 L.Ed.2d 292 (2001). Harmless error applies to the prejudice prong inasmuch as the issue does not present a structural error. *See United States v. Mojica–Baez,* 229 F.3d 292, 311 (1st Cir.2000), *cert. denied,* 532 U.S. 1065, 121 S.Ct. 2215, 150 L.Ed.2d 209 (2001); *Sustache–Rivera v. United States,* 221 F.3d at 17. Because this case is on collateral review, the actual prejudice harmless error test described in *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), applies. *Sustache–Rivera v. United States,* 221 F.3d at 18; *see also Singleton v. United States,* 26 F.3d 233, 236–237 (1st Cir.1994) (discussing harmless error review in context of section 2255 motion). Even assuming, for purposes of argument, that petitioner can overcome this procedural bar, he cannot obtain section 2255 relief because the failure to include the drug amount and the statutory penalty in counts eight and nine was proper at the time of his sentencing and the new rule announced in *Apprendi* does not apply retroactively. In addition, even assuming such retroactivity, petitioner is not entitled to relief under *Apprendi.*

"[A]n indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and enables him to enter a plea without fear of double jeopardy." *United States v. Yefsky,* 994 F.2d 885, 893 (1st Cir.1993); *accord United States v. McGee,* 798 F.Supp. 53, 59 (D.Mass.1992) (indictment sufficient if it contains essential elements of offense, apprizes the defendant of the charge and accurately shows extent to which the defendant may plead as a bar to future prosecution). Although an "indictment may incorporate the words of a statute to set forth the offense," the "statutory language 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.'" *United States v. Mojica–Baez,* 229 F.3d at 309.

Petitioner specifically complains that counts one, eight and nine did not include the amount of heroin involved and the statutory penalty. Count One is sufficient on its face. Counts eight and nine, however, do not contain the amounts of heroin or the applicable statutory penalty set forth in section 841(b).[15]

The practice in this circuit prior to the June 26, 2000 decision by the Supreme Court in *Apprendi,* was that the quantity of drugs was not an essential element of section 841(a) but rather a sentencing factor which the court could determine at sentencing by a preponderance of the evidence. *United States v. Rivera Maldonado,* 124 F.Supp.2d 788, 789 (D.P.R.2000). This practice was in accord with the prac-

---

**15.** The Second Superseding Indictment charged petitioner with conspiracy to commit a drug trafficking offense in violation of section 846 (Count One) and the unlawful manufacture or distribution of a controlled substance in violation of section 841(a)(1) (counts eight and nine). Count One noticed the applicability of the penalty provision of the relevant statute, cited section 841(b)(1)(B)(i) and specified the amount of heroin as more than 100 grams. To the extent petitioner argues that Count One fails to give him proper notice of the amount of heroin or the statutory penalty, the claim is without merit. *See, e.g., United States v. Strickland,* 245 F.3d 368, 379 (4th Cir.2001) (conspiracy charge gave the defendant adequate notice as to amount of drugs by charging " 'at least five (5) kilograms of cocaine and fifty (50) grams of cocaine base (crack) were possessed and distributed' "). In contrast to Count One, counts eight and nine did not notice the quantity of heroin involved or cite section 841(b)(1).

tice in other circuits. *See United States v. Rogers*, 228 F.3d 1318, 1326 (11th Cir.2000) (collecting case law prior to *Apprendi* in other circuits). With respect to the deficiencies alleged by petitioner, the Second Superseding Indictment was proper at the time it issued on June 10, 1998, and remained proper at the time of the January 13, 2000 sentencing hearing. Counts eight and nine provided petitioner with notice of the charges against him by not only parroting the statutory language but also identifying the dates of the sales and the drug involved. Hence, petitioner can only obtain section 2255 relief if *Apprendi* applies retroactively to his case.

"[M]ost of the circuits that have considered the retroactivity of *Apprendi*," including the First Circuit, "have done so under the rubric of second or successive petitions." *United States v. Latney*, 131 F.Supp.2d 31, 33 (D.D.C.2001) (collecting cases including *Sustache–Rivera v. United States*, 221 F.3d 8 (1st Cir.2000)). Applying the retroactivity analysis of *Teague v. Lane*, 489 U.S. 288, 310–313, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989),[16] "it is well established that *Apprendi* does not fall within" *Teague's* exception of a rule that "places 'certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe.'" *United States v. Latney*, 131 F.Supp.2d at 33–34. The majority of district courts [17] as well as the fourth, *United States v. Sanders*, 247 F.3d 139, (4th Cir. 2001), eighth, *United States v. Moss*, 252 F.3d 993 (8th Cir.2001), and ninth circuits, *Jones v. Smith*, 231 F.3d 1227, 1237–1238 (9th Cir.2000), conclude that *Apprendi* also does not fall within *Teague's* second limited exception applicable to watershed rules

which are " 'implicit in the concept of ordered liberty.'" *O'Dell v. Netherland*, 521 U.S. 151, 157, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997).

 Following this majority view, this court also finds that *Apprendi* does not fall within the watershed exception to the nonretroactivity rule. *Apprendi* "does not set down a new constitutional rule of criminal procedure which improves the accuracy in determining guilt or innocence." *United States v. Latney*, 131 F.Supp.2d at 34. To the contrary, it simply shifts the offense from the judge during sentencing to the jury during trial and requires a showing of proof beyond a reasonable doubt as opposed to by a preponderance of the evidence. *United States v. Latney*, 131 F.Supp.2d at 34. As such, the rule "does not directly relate to the accuracy of the conviction or sentence, nor does it implicate fundamental fairness." *United States v. Latney*, 131 F.Supp.2d at 34. Given the nonretroactivity of *Apprendi*, petitioner's claim fails.

 Furthermore, the rule in *Apprendi* does not apply to petitioner who received a minimum mandatory sentence. The Supreme Court held in *Apprendi* that, any fact, other than the fact of a prior conviction, "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. at 490, 120 S.Ct. 2348. "Although *Apprendi* did not specifically confront the indictment issue," where, as here, the petitioner pleaded guilty prior to trial, the circuits addressing the issue hold that *Apprendi* requires a "grand jury indictment of each and every

---

16. The *"Teague* inquiry is implicated because *Apprendi* is obviously a 'new rule' subject to the general rule of nonretroactivity." *United States v. Moss*, 252 F.3d 993 (8th Cir.2001).

17. The Eighth Circuit in *United States v. Moss*, 252 F.3d 993 n. 4 (8th Cir.2001), exhaustively catalogues the district court decisions which find that *Apprendi* is not a watershed rule within the meaning of *Teague*.

element." *United States v. Wilkes*, 130 F.Supp.2d 222, 232–233 (D.Mass.2001); *accord Daniels v. United States*, 254 F.3d 1180, 2001 WL 709103 at * 1 (10th Cir. June 25, 2001) ("Although *Apprendi* did not explicitly include indictment practices in this rule, it suggested that the relevant facts must be included in an indictment as well.").

In this circuit, however, the rule in *Apprendi* does not extend to circumstances where the court imposes a mandatory minimum sentence. *See United States v. Robinson*, 241 F.3d 115, 122 (1st Cir.2001) (recognizing that *McMillan v. Pennsylvania*, 477 U.S. 79, 81–93, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), "survives *Apprendi*"), *petition for cert. filed*, (June 4, 2001) (No. 00–10411); *see also United States v. Camacho*, 248 F.3d 1286, 1289 n. 5 (11th Cir.2001) (noting circuit split and that First Circuit's *Robinson* decision recognized that mandatory minimums do not violate *Apprendi*). In petitioner's case, the court imposed the minimum mandatory sentence of five years. *Apprendi*, therefore, does not apply. *United States v. Robinson*, 241 F.3d at 122.

■ In addition, even if *Apprendi* applied, the sentence imposed, five years, did not exceed the default statutory maximum of 20 years applicable to both section 846 and section 841(a)(1). 21 U.S.C. § 841(b)(1)(C); *see United States v. Baltas, Sr.*, 236 F.3d 27, 40–41 (1st Cir.2001) (applying *Apprendi* rule to section 846 conviction for conspiracy to commit drug trafficking where amount of heroin attributed to the defendant was not found by jury beyond reasonable doubt but, rather, was determined by court at sentencing by preponderance of evidence), *cert. denied*, 532 U.S. 1030, 121 S.Ct. 1982, 149 L.Ed.2d 773 (2001). Although counts eight and nine failed to allege drug quantity, "No *Apprendi* violation occurs when the district court sentences a defendant below the default statutory maximum, even though drug quantity, determined by the court under a preponderance-of-the-evidence standard, influences the length of the sentence imposed." *United States v. Robinson*, 241 F.3d at 119; *accord United States v. Baltas, Sr.*, 236 F.3d at 41 ("if the judge made factual determination merely narrows the judge's discretion within the range already authorized by the offense of conviction, then no *Apprendi* violation occurs").

Petitioner's argument that counts eight and nine fail to contain the essential elements of a section 841(a) offense because they do not contain the amount of heroin or the applicable statutory penalty provision of section 841(b) is, accordingly, without merit.

### CONCLUSION

In accordance with the foregoing discussion, the motion to amend (Docket Entry # 5) is **ALLOWED** and the motion to vacate is amended to include a claim that the Second Superseding Indictment fails to contain the essential elements of drug quantity and statutory penalty: As amended, however, this court **RECOMMENDS**[18] that the motion to vacate (Docket Entry # 1) be **DENIED**.

August 2, 2001.

---

18. Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the ob-

jections. Failure to file objections within the specified time waives the right to appeal the order. *United States v. Escoboza Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986).