# United States Court of Appeals
## For the First Circuit

No. 05-2746

UNITED STATES OF AMERICA,

Appellee,

v.

VICTOR MILIANO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, Senior U.S. District Judge]

Before

Lynch, Circuit Judge,
Selya, Senior Circuit Judge,
and Lipez, Circuit Judge.

Jorge E. Rivera-Ortíz, by appointment of the court, for appellant.
German A. Rieckehoff, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney (Chief, Appellate Division), were on brief, for appellee.

March 28, 2007

**SELYA**, <u>Senior Circuit Judge</u>. A criminal defendant, disappointed by his sentence, seeks appellate review despite his earlier waiver of any right to appeal. Concluding, as we do, that the defendant has forfeited any right to contest the waiver and that, in all events, no miscarriage of justice will result from its enforcement, we dismiss the appeal.

The underlying case had its genesis in a four-count indictment handed up by a federal grand jury sitting in the District of Puerto Rico. That indictment charged twenty-four individuals with conspiring to distribute narcotics and/or to launder the resultant proceeds. Among those charged with conspiring to commit money laundering was defendant-appellant Victor Miliano. The indictment noted, inter alia, that the authorities had discovered an illegal firearm attributable to Miliano at a stash house.

After some procedural wrangling, not relevant here, Miliano pleaded guilty to both the conspiracy count and to a related forfeiture count. <u>See</u> 18 U.S.C. §§ 1956(h), 982. In a negotiated plea agreement (the Agreement), Miliano acknowledged that, on two occasions (July 9 and 12, 2004), he had chauffeured a car carrying drug proceeds totaling nearly one-half million dollars for the purpose of concealing the ownership of the funds. Miliano received a stipend of $300 for the first delivery and $1,000 for the second. While he admitted that he knew that the funds were the

avails of illegal activity, he denied knowing that they were derived from narcotics trafficking. This denial, which the government reserved the right to contest, is of some moment; the federal sentencing guidelines demand a six-level enhancement of a defendant's offense level in cases in which the defendant knows or believes that laundered funds are the proceeds of a controlled substance offense. See USSG §2S1.1(b)(1).

In addition to leaving for argument before the sentencing court the question of whether the disputed six-level enhancement should attach, the Agreement recounted a number of agreed adjustments (some upward, some downward). It also contained clauses memorializing the government's agreement (i) not to oppose a sentence at the bottom of whichever guideline range proved to be applicable and (ii) to forgo any monetary recovery on the forfeiture count (except for the mandatory $100 special assessment required by 18 U.S.C. § 3013(a)). And, finally, the Agreement contained a clause waiving Miliano's right to appeal his sentence as long as the court sentenced him according to its terms.

At the change-of-plea hearing, Miliano had the assistance of a court-appointed interpreter. The district judge explored the voluntariness of Miliano's plea and conducted a thorough inquiry into whether Miliano understood the rights he was surrendering. This inquiry included specific reference to the waiver of appeal. The court then confirmed that Miliano's attorney had reviewed the

Agreement with him in Miliano's native tongue (Spanish). In the end, the court found Miliano's plea to be knowing and voluntary, accepted the Agreement, and informed Miliano, in a literally correct comment, that "under some circumstances you or the government may have the right to appeal any sentence that this court imposes."

The district court convened the disposition hearing on October 18, 2005. The sole disputed factual issue was whether Miliano had known that the transported funds were drug proceeds. The presentence investigation report (PSI Report) recommended an affirmative answer to this question (and, accordingly, recommended inclusion of the six-level enhancement).

At the disposition hearing itself, the government called as a witness a federal agent, Luis Ortiz, who had overseen the investigation that resulted in Miliano's arrest. To supplement this testimony, the government introduced videotapes of both the July 9 and July 12 incidents. Ortiz narrated the videotapes, which depicted Miliano and an associate, Angel Moreno-Núñez (Moreno), meeting undercover agents in a public parking lot. On both occasions, Miliano functioned as the driver (using a different car each time) while Moreno conducted the discussions with the undercover agents and delivered shopping bags full of currency to them. Ortiz added that code-laden telephone conversations between Moreno and undercover agents prior to the first meeting were

conducted in a manner characteristic of drug-trafficking transactions.

Ortiz also testified about a meeting between the undercover agents and the money launderers inside a store immediately prior to the beginning of the July 9 videotape. He noted that Miliano was present at that meeting.

At the conclusion of his testimony, Ortiz stated that in eight years of investigative work he had neither encountered nor heard about "any other kind of business [besides trafficking in narcotics proceeds that] delivers large amounts of quantities of cash using codes, delivering currency on the street, [in the] denominations" transported by Miliano. Drawing on this testimony, the overall factual scenario, and Miliano's possession of a gun,[1] the government argued that Miliano must have known that he was engaged in the laundering of drug money.

Miliano's lawyer attempted to blunt the force of Ortiz's testimony by establishing that the agent's experience was exclusively in narcotics and the laundering of drug proceeds. Thus, the lawyer argued, Ortiz would not be aware whether or not other criminal enterprises laundered funds using similar

---

[1]Miliano was not charged with possession of the gun, received no sentence enhancement for the gun, and never explicitly acknowledged possessing it. However, the gun was mentioned in the PSI Report as well as the indictment, and Ortiz alluded to it in his testimony. In all events, during the disposition hearing, defense counsel stated that he was not challenging the information related to the gun.

techniques. The lawyer added that Miliano himself had not used any codes, nor had he personally carried the funds. Finally, the lawyer asserted that the gun was not probative of whether Miliano believed he was engaged in laundering drug proceeds.

The sentencing court found by a preponderance of the evidence that Miliano had knowledge that the funds were drug proceeds and, accordingly, applied the six-level enhancement. The court rested this finding primarily on "the amounts [Miliano] was paid for the pick ups, the bag that was used in the pick ups, the place where the pick ups took place, [and] the modus operandi of drug payments in Puerto Rico." This finding, when combined with the other (agreed) sentencing adjustments, yielded a guideline sentencing range of 57-71 months. The court sentenced Miliano to the bottom of the range and then informed him that he had a right to appeal if the sentence imposed was "contrary to law."

This timely appeal ensued. In it, Miliano attempts to attack both the six-level enhancement and the reasonableness of his sentence. See United States v. Booker, 543 U.S. 220, 261 (2005); United States v. Jiménez-Beltre, 440 F.3d 514, 517 (1st Cir. 2006) (en banc), cert. denied, 127 S. Ct. 928 (2007).

The threshold question is whether we should enforce Miliano's waiver of appellate rights. Here, that question is answered by default: Miliano did not brief it, preferring instead to ignore the waiver and its effect. Even after the government

-7-

filed its brief, relying heavily on the waiver, Miliano eschewed the filing of a reply brief. This struthious approach was a poor strategic choice.

A defendant who waives his right to appeal and thereafter attempts to avoid the effect of the waiver must confront the waiver head-on. Where, as here, the defendant simply ignores the waiver and seeks to argue the appeal as if no waiver ever had been executed, he forfeits any right to contend either that the waiver should not be enforced or that it does not apply. See Sandstrom v. ChemLawn Corp., 904 F.2d 83, 87 (1st Cir. 1990) (explaining that arguments not made in an appellant's opening brief are deemed waived); see also United States v. Coplin, 463 F.3d 96, 102 n.6 (1st Cir. 2006) (applying Sandstrom principle in a criminal appeal). Miliano's appeal is subject to dismissal for this reason alone.

To be sure, we could, in the exercise of our discretion, forgive a defendant's failure to brief the reasons why a waiver should not be construed to bar an appeal — but that discretion should be exercised only when doing so is necessary in order to avoid a clear and gross injustice. Cf. United States v. Maldonado-Garcia, 446 F.3d 227, 230 (1st Cir. 2006) (applying the "clear and gross injustice" standard for appellate review when defendant waived his motion for a judgment of acquittal in the district

court).  Such cases will be hen's-teeth rare and, as we explain below, this case is not of that genre.

We set forth the appropriate test for evaluating the enforceability of a waiver of appellate rights in United States v. Teeter, 257 F.3d 14 (1st Cir. 2001).  There, we held that a waiver of the right to appeal is binding when (i) "the written plea agreement signed by the defendant contains a clear statement elucidating the waiver and delineating its scope"; (ii) the district court "inquire[d] specifically at the change-of-plea hearing into any waiver of appellate rights"; and (iii) denial of the right to appeal does not work a miscarriage of justice.  Id. at 24-25.

In this instance, the first two requirements are readily satisfied.  The Agreement, bearing Miliano's signature, contains a specific provision that states with unmistakable clarity that "[t]he defendant hereby agrees that if this Honorable Court accepts this agreement and sentences him according to its terms and conditions, [he] waives and surrenders his right to appeal the judgment and sentence in this case." Moreover, at the change-of-plea hearing, the district judge inquired pointedly into Miliano's understanding of the waiver of appeal, confirmed that defense counsel had explained the various provisions of the Agreement (including the waiver of appeal provision) to Miliano in Spanish, and verified Miliano's understanding of the Agreement and its

ramifications.  No more was exigible.  See, e.g., United States v. Gil-Quezada, 445 F.3d 33, 36-37 (1st Cir. 2006); United States v. De-La-Cruz Castro, 299 F.3d 5, 12 (1st Cir. 2002).

This brings us to Teeter's third prong: the miscarriage of justice exception.  This exception is to "be applied sparingly and without undue generosity."  Teeter, 257 F.3d at 26.  A miscarriage of justice, at a minimum, involves an increment of error more glaring than routine reversible error.  See id. (noting that the miscarriage of justice requirement is "demanding enough to prevent defendants who have agreed to waive their right to appeal from successfully pursuing garden-variety claims of error").  Given Miliano's failure to brief the enforceability of the waiver, see text supra, it suffices to say that his garden-variety claims of error do not approach this order of magnitude.[2]

We need go no further.  Miliano knowingly and voluntarily entered into a plea agreement, through which he received

---

[2]We see no need to enumerate these claims.  We note, however, Miliano's argument that there was insufficient evidence for the court to conclude that he knew that he was involved in laundering drug proceeds.  In his view, the government's evidence was probative only of his knowledge that he was illegally laundering money, not that he knew the money's origins.

This argument overlooks that the district court had before it the PSI Report, the videotapes, and Ortiz's testimony.  With these guideposts, the court drew its ultimate inference from the totality of the circumstances.  Even without a waiver of appeal, we review a sentencing court's factual findings only for clear error, United States v. Ruiz, 905 F.2d 499, 507 (1st Cir. 1990), and a sentencing court's choice between competing, but rational, inferences cannot be clearly erroneous, see id. at 508.

significant consideration (including a minor role adjustment and a favorable sentencing recommendation) in exchange for, inter alia, a waiver of his right to appeal. The waiver was explicit, and Miliano understood its import. To cinch matters, he failed appropriately to challenge it in his brief on appeal. Under the circumstances, we are fully satisfied that no clear and gross injustice will result from the enforcement of that waiver according to its tenor. Consequently, we dismiss Miliano's appeal.

**<u>Appeal dismissed</u>**.