**UNITED STATES of America,**
**Appellee,**

v.

**Juan Luís CALDERÓN–PACHECO,**
**Defendant, Appellant.**

Nos. 08–1193, 08–1194.

United States Court of Appeals,
First Circuit.

Submitted March 27, 2009.

Decided April 24, 2009.

Elfrick Mendez Morales on brief for appellant.

Rosa Emilia Rodríguez–Vélez, United States Attorney, Nelson Pérez–Sosa, Assistant United States Attorney, (Chief, Appellate Division), and Germán A. Rieckehoff, Assistant United States Attorney, on brief for appellee.

Before LYNCH, Chief Judge, SELYA and BOUDIN, Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant Juan Luís Calderón–Pacheco pleaded guilty to criminal charges pursuant to a plea agreement (the Agreement). The Agreement contained, among its other provisions, a waiver of his right to appeal his sentence. After the district court sentenced him, the defendant nonetheless prosecuted these appeals.[1] In flagrant disregard of the explicit warning issued by this court in *United States v. Miliano*, 480 F.3d 605, 608 (1st Cir.2007), the defendant's brief neither acknowledges the waiver nor addresses its effect. Consequently, we dismiss the appeal.

Because these appeals follow a guilty plea, we take the facts from the Agreement, the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing. *United States v. Vargas*, 560 F.3d 45, 47 (1st Cir.2009); *United States v. Dietz*, 950 F.2d 50, 51 (1st Cir.1991).

In 2007, the authorities arrested the defendant and others. Those arrested were later charged in two parallel indictments, each of which described a discrete conspiracy to possess with intent to distribute fifty grams or more of a controlled substance within 1,000 feet of a public housing facility. *See* 21 U.S.C. §§ 841(a)(1), 846, 860(a).

After some preliminary skirmishing (not relevant here), the defendant agreed to plead guilty, pursuant to the Agreement, to both conspiracy counts. The Agreement contained stipulations concerning drug quantity and reflected the government's promise to recommend concurrent five-year sentences for each conspiracy count. The five-year terms represented the statutory minimum for each count. *See id.* § 841(b)(1)(B).

Paragraph 15 of the Agreement contained a waiver of appeal rights, in which the defendant agreed that, as long as the district court "accepts this Plea Agreement and sentences him ... according to its terms, conditions, and recommendations, the defendant waives and surrenders his right to appeal the judgment and sentence."

A change-of-plea hearing took place on September 25, 2007. The defendant conceded the accuracy of the government's summary of the Agreement and noted that his only disagreement with the government's version of the facts incident to the offenses of conviction related to the inclusion of a particular co-conspirator (whom

---

1. There are two indictments involved in this case. Although the district court consolidated the indictments for sentencing, the defendant filed a separate notice of appeal from each sentence. We have consolidated the two appeals.

the defendant maintained was uninvolved).[2]

The facts recited in the PSI Report and not challenged by the defendant indicate that, from some time in 2000 through April 11, 2007, he participated in a conspiracy to distribute crack cocaine. In February of 2006, he joined a second conspiracy to purvey heroin.

At the change-of-plea hearing, the defendant admitted his guilt with respect to both conspiracies. He was represented by counsel and had the services of an interpreter. The court confirmed that the defendant had discussed the Agreement with his lawyer and that the Agreement had been translated for him into Spanish (his native tongue). The court carefully explored the voluntariness of the proffered guilty plea and thoroughly explained the panoply of rights to which the defendant would be entitled should he choose to put the government to its proof.

As the proceeding continued, the court confirmed that the defendant understood the charges to which he was pleading, the rights that he was relinquishing, and the possibility that he might receive a sentence more severe than that referenced in the Agreement. The court expressly noted that one right the defendant would be waiving was his right to appeal. In this regard, the court complied fully with the commands of Federal Rule of Criminal Procedure 11(b)(1)(N).[3] When all was said and done, the court accepted the defendant's guilty plea to both conspiracy counts.

The court consolidated the two indictments for sentencing. The disposition hearing got under way on September 25, 2007. In conformity with the Agreement, the government recommended a five-year sentence for each count and proposed that those sentences run concurrently with one another.

Drawing on the PSI Report, the sentencing court noted that the defendant was serving an as-yet-undischarged sixteen-year term of immurement imposed by a Puerto Rico court for an earlier second-degree murder conviction. This conviction was not mentioned in the Agreement. The murder itself took place in April of 2005; the defendant was convicted of the crime on November 6, 2006; and he had already begun to serve that sentence when he appeared in federal court for his federal sentencing.

The defendant beseeched the district court to consider the murder as "relevant conduct" for the purpose of federal sentencing. *See* USSG § 1B1.3. He premised this importuning on temporal coincidence: the fact that the murder had occurred in the same general time frame as his narcotics trafficking. On that basis, he contended that whatever sentence the district court imposed should run concurrently with the undischarged portion of the Puerto Rico sentence. *See id.* § 5G1.3(b) (providing that if a "term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction ... and was the basis for an increase in the instant offense level," the later sentence should "run concurrently to the remainder of the undischarged term of imprisonment").

The district court rejected the defendant's contention. The court imposed a five-year incarcerative term for each count

---

**2.** This contretemps is immaterial to the issues on appeal.

**3.** This rule provides that before accepting a plea, "the court must inform the defendant of,

and determine that the defendant understands, ... the terms of any plea-agreement provision waiving the right to appeal ... the sentence." Fed.R.Crim.P. 11(b)(1)(N).

of conviction and ran those terms concurrently with one another (as the defendant had requested and the government had recommended). But the court, contrary to the defendant's exhortations, ordered these concurrent sentences to run consecutively to the undischarged portion of the Puerto Rico sentence. These timely appeals followed.

We need not tarry. As said, the Agreement contains a waiver of the right to appeal, and the defendant consented to that waiver. The threshold question, then, is whether these appeals are properly before us. We conclude that they are not.

■ Ordinarily, an inquiry into the enforceability of a waiver of appeal in a criminal case would entail a step-by-step determination of the nature and circumstances of the waiver. *See, e.g., United States v. Cardona–Diaz,* 524 F.3d 20, 22–23 (1st Cir.2008); *United States v. Teeter,* 257 F.3d 14, 23–24 (1st Cir.2001). This would involve ensuring that the defendant's entry into the waiver was knowing and voluntary; that the sentencing court adequately explained its import; that the putative appeal came within the scope of the waiver; and that enforcement of the waiver according to its tenor would not work a miscarriage of justice. *Teeter,* 257 F.3d at 23–24.[4]

■ Here, however, the defendant has forfeited the right to that searching appraisal. He has not argued that the waiver is invalid or that it should not be enforced. Instead, he has chosen to ignore

it. His brief does not address the waiver at all. It is said that actions have consequences-and that maxim is borne out by the defendant's action in turning a blind eye to the existence of the waiver of appeal.

In *Miliano,* a similar lapse occurred. We warned that if a defendant who has assented to a waiver of appeal nonetheless essays an appeal yet fails to present any developed argument to this court against the applicability of the waiver, he will be deemed to have forfeited the right to contest the waiver. 480 F.3d at 608. The defendant here disregarded this warning; his brief on appeal jumps immediately to the merits of his argument as to why his sentence should have been different, without even mentioning the waiver provision.

■ Courts ought not to be obliged to do a litigant's homework for him. Thus, we see no reason to retreat from the aposematic position that we outlined in *Miliano.* The waiver here is written in standard verbiage, and the defendant's claim of sentencing error falls squarely within its scope. Under these circumstances, unless a miscarriage of justice looms, the waiver bars the attempted prosecution of these appeals. *See United States v. Parrilla Román,* 485 F.3d 185, 192 (1st Cir.2007); *Miliano* 480 F.3d at 609.[5]

As we explained in *Miliano,* 480 F.3d at 608, we have discretion to overlook a failure to contest a waiver of appeal. Withal, that discretion should be exercised spar-

---

**4.** There is an open question as to whether the *Teeter* miscarriage-of-justice exception survives under recent Supreme Court precedent. *See United States v. Borrero–Acevedo,* 533 F.3d 11, 19 (1st Cir.2008) (noting, but declining to decide, the question). As we did in *Borrero–Acevedo,* we leave that question for another day.

**5.** To be sure, the defendant might have argued that the district court did not sentence him "according to" the "recommendations" contained in the Agreement. But that argument was not advanced and, in all events, the district court made it abundantly clear during the change-of-plea colloquy that it would not be bound by the government's recommendation.

ingly, and only to avoid a clear and gross injustice. *Id.* We discern none here.

As a general matter, there is nothing unjust about holding a defendant to the bargain struck in his plea agreement. *See Teeter,* 257 F.3d at 25–26. Knowing and voluntary waivers of appeal rights are presumptively valid, and the miscarriage exception applies only in "egregious" cases. *Id.* Simple error, even what ordinarily would amount to reversible error, does not vault the hurdle erected by the waiver. *See Parrilla Román,* 485 F.3d at 193; *United States v. Joiner,* 183 F.3d 635, 645 (7th Cir.1999).

The miscarriage of justice standard is not satisfied, or even closely approached, in this case. The purported error elaborated in the defendant's brief is a garden-variety claim that the sentencing court misunderstood the preferred approach to consecutive versus concurrent sentences under the advisory guidelines. Even if this claim of error had bite-and we do not seriously suggest that it does [6]—such a claim would not serve to exempt this case from the application of the usual forfeiture principles. *See, e.g., Miliano,* 480 F.3d at 608; *United States v. Maldonado–Garcia,* 446 F.3d 227, 230 (1st Cir.2006).

We need go no further. For the reasons elucidated above, we dismiss these appeals.

*Dismissed.*

---

6. The government made no specific recommendation concerning the juxtaposition of the murder sentence vis-à-vis the federal sentences. Moreover, there is not a shred of evidence that the murder was a part of the course of conduct that comprised either of the drug-trafficking conspiracies. Hence, there is no basis for a finding that the murder constituted "relevant conduct" as to the offenses of conviction. *See* USSG § 1B1.3; *United States v. Lino,* 493 F.3d 41, 44 (1st Cir.2007). It follows that the district court was at liberty to run its sentences "concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment." USSG § 5G1.3(c).