# United States Court of Appeals
## For the First Circuit

No. 11-1927

UNITED STATES OF AMERICA,

Appellee,

v.

GLEN RIVERA-ORTA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Torruella, Selya and Howard,
Circuit Judges.

Michael J. Tuteur, Nicholas J. Ellis, and Foley & Lardner LLP on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, on brief for appellee.

January 25, 2013

**SELYA**, **Circuit Judge**.  Defendant-appellant Glen Rivera-Orta pleaded guilty to a charge of conspiring to possess narcotics with intent to distribute.  In due course, the district court imposed sentence.  Although his plea agreement contained a waiver-of-appeal provision, the defendant nevertheless attempts to appeal.  We enforce the waiver of appeal, reject a parallel ineffective assistance of counsel claim as unripe, and dismiss the improvidently filed appeal.

Inasmuch as this appeal trails in the wake of a guilty plea, we draw the facts from the plea agreement, the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing.  See United States v. Calderón-Pacheco, 564 F.3d 55, 56 (1st Cir. 2009); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

In December of 2007, federal agents arrested and charged upwards of 120 individuals (including the defendant) for their alleged participation in a sprawling drug-trafficking conspiracy.  The government averred that, as part of the conspiracy, the defendant owned and operated a drug point for which he purchased drugs wholesale; that he thereafter was responsible for repackaging the contraband; and that he served, from time to time, as an enforcer for the drug ring.

Immediately before his trial was to start, the defendant agreed to plead guilty to the conspiracy charge, see 21 U.S.C. §§ 841(a)(1), 846, 860, and the parties executed a nonbinding plea agreement. The district court accepted the ensuing plea and ordered the preparation of a PSI Report.

The guideline calculation, embodied in the plea agreement and reiterated in the PSI Report, was straightforward. The calculation started with a stipulated base offense level (30). It then incorporated three upward adjustments, totaling six levels. See USSG §2D1.1(b)(1) (possession of firearms); id. §2D1.2(a)(1) (proximity to protected location); and id. §3B1.1(c) (leadership role). It then proceeded to apply a three-level downward adjustment. See id. §3E1.1 (acceptance of responsibility). Pairing the adjusted offense level (33) with the applicable criminal history category (I) produced a guideline sentencing range (GSR) of 135-168 months.

At the disposition hearing, these calculations went unchallenged. Defense counsel acknowledged the defendant's status as a drug-point owner, but claimed mitigating circumstances and sought a sentence at the nadir of the GSR.[1] The district court

---

[1] At one point prior to sentencing, the defendant moved pro se for a downward departure, asserting that his role as a member in the conspiracy was to act as "a small-time middle-man." This motion was never ruled upon explicitly, and the position asserted in it appears to have been abandoned by the time that the district court convened the disposition hearing.

obliged, sentencing the defendant to 135 months in prison. This appeal followed.

The defendant's principal claim is one of sentencing error: he contends that the district court erred in imposing a two-level enhancement for his supposed leadership role. See USSG §3B1.1(c). There is a threshold issue that must be resolved before we can entertain this claim of sentencing error: the government asseverates that the claim is foreclosed by the terms of the plea agreement.

The government's asseveration is driven by the fact that the plea agreement contained a waiver-of-appeal provision. That provision memorialized the defendant's agreement that, as long as the district court "accepts this Plea Agreement and sentences [him] according to its terms, conditions and recommendations" — which it did — the defendant "waives and surrenders his right to appeal the judgment and sentence in this case."

A waiver of appellate rights in a criminal case, made knowingly and voluntarily, is presumptively enforceable. See United States v. Nguyen, 618 F.3d 72, 74 (1st Cir. 2010). We employ a tripartite test in order to determine whether a waiver of appeal should be enforced. See United States v. Teeter, 257 F.3d 14, 24-26 (1st Cir. 2001). To begin, we evaluate whether the written plea agreement "contains a clear statement elucidating the waiver and delineating its scope." Id. at 24. Next, we examine

-4-

whether the "district judge . . . question[ed] the defendant specifically about [his] understanding of the waiver provision and adequately inform[ed] [him] of its ramifications." Id.; see also Fed. R. Crim. P. 11(b)(1)(N). If these criteria are not satisfied, the waiver of appeal is rendered nugatory.

The third step in the progression is in the nature of a safety valve. Even if the first two criteria are satisfied, we may refuse to enforce the waiver of appeal if doing so would result in a miscarriage of justice. See Teeter, 257 F.3d at 25.

In the case at hand, the defendant argues, albeit weakly, that his waiver of appeal was neither knowing nor voluntary because he was insufficiently informed about the rights that he was surrendering. This argument is undercut both by the language of the plea agreement and by the transcript of the change-of-plea colloquy.

The plea agreement set forth the scope and terms of the waiver of appeal with conspicuous clarity. And at the change-of-plea hearing, the district court made a thorough inquiry into the knowing and voluntary character of the plea agreement, including the waiver-of-appeal provision. In explaining that provision to the defendant, the court made pellucid that "the waiver of appeal means that you will accept my sentence if it is within [the agreed upon] range, as the final sentence and you will not go to a higher Court asking those Judges . . . to basically review what

transpired, you will just accept the sentence because that is the sentence that you stipulated to." At the end of the hearing, the court supportably found that the defendant was "competent to plead, fully aware of his Constitutional rights and [the] consequences of waiving the same," and had voluntarily entered into the plea agreement (including the waiver-of-appeal provision) after discussions with counsel.

No more is exigible to warrant a finding that the defendant knowingly and voluntarily waived his appellate rights. The waiver-of-appeal provision is, therefore, presumptively enforceable.

The defendant's fallback position is that his waiver of appeal should not be enforced because doing so would work a miscarriage of justice. In this context, "the term 'miscarriage of justice' is more a concept than a constant." Teeter, 257 F.3d at 26. An inquiry into a miscarriage of justice claim requires us to consider factors such as the character, extent, and impact of the alleged error. See id. At a minimum, a miscarriage of justice must "involve[] an increment of error more glaring than routine reversible error." United States v. Miliano, 480 F.3d 605, 608 (1st Cir. 2007). The practical effect of this circumscription is that the miscarriage exception is to be applied "sparingly and without undue generosity." Teeter, 257 F.3d at 26.

The defendant asserts that the exception pertains here because the role-in-the-offense enhancement was unfounded. As part of his plea agreement, however, the defendant stipulated to the application of the very enhancement about which he now complains. During the change-of-plea colloquy, the district court confirmed the defendant's agreement to this enhancement.[2] A defendant cannot agree to both an enhancement and its factual predicate, reiterate that agreement in open court, and later repudiate it merely to suit his later convenience. We hold, therefore, that the defendant waived any challenge to the imposition of the enhancement. See United States v. Serrano-Beauvaix, 400 F.3d 50, 54 (1st Cir. 2005). This holding, in turn, defenestrates the argument that the enhancement spawned a miscarriage of justice.

The defendant has one more shot in his sling. He argues that he received ineffective assistance of counsel in the court below. The crux of this argument is his assertion that his trial counsel failed to advise him in a timely manner of a favorable plea offer.

The facts are alleged in the defendant's brief to be as follows. The defendant avers that on the morning that jury selection was to begin, his attorney informed him that the government had tendered a plea offer, which envisioned a 96-month

---

[2] The court also confirmed the defendant's admission of his status as a drug-point owner within the conspiracy (the central fact upon which the role-in-the-offense enhancement was premised).

-7-

sentence. The defendant indicated a willingness to accept this offer, and his lawyer began to prepare the necessary paperwork. Before any agreement could be firmed up, however, jury selection began. At the conclusion of the empanelment, the defendant's counsel advised him that the government would not agree to recommend a sentence of less than 135 months.

The defendant's complaint about the quality of the representation that he received is based on this sequence of events. He asserts that his lawyer delayed for an unreasonable period of time before conveying the putative 96-month plea offer to him; and that, had the offer been conveyed earlier, he would have accepted it and entered into a firm agreement well before jury selection began.

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel." Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994). In determining whether an attorney's performance falls below the constitutional norm, a defendant is required to show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). "A defendant who alleges ineffective assistance of counsel must carry the devoir of persuasion on both tiers of the Strickland test." Scarpa, 38 F.3d at 8-9.

Notwithstanding the constitutional provenance of the right to effective assistance of counsel in a criminal case, a defendant does not have an absolute right to advance such a claim for the first time on direct review of a conviction or sentence. "We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993). Such a claim will be entertained on direct review only in the rare instance when "the critical facts are not in dispute and the record is sufficiently developed to allow reasoned consideration of the claim." Id.

In this case — as in most cases in which the claim of ineffective assistance has not been presented to the trial court — the record is not adequately developed to allow for reasoned consideration of the claim. Specifically, the district court record lacks any evidence anent the details and timing of the serial plea offers described by the defendant. Similarly, the district court record is barren of any explanations by either the defendant's trial counsel or the prosecutor about the sequence and timing of plea negotiations.[3]

---

[3] This paucity of evidence is made starkly apparent by the defendant's acknowledgment that he has thus far been "unable to confirm the timing" of the government's putative 96-month plea

To say more on this point would be supererogatory. Where, as here, the district court record is so sparse as to be unhelpful, "we have routinely dismissed the relevant portion of the appeal without prejudice to the defendant's right to litigate his ineffective assistance claim through the medium of an application for post-conviction relief." Mala, 7 F.3d at 1063. We follow that praxis here and dismiss the defendant's ineffective assistance of counsel claim without prejudice to his right to renew it, if he so chooses, by means of a petition under 28 U.S.C. § 2255.[4] See, e.g., United States v. Walker, 665 F.3d 212, 234 (1st Cir. 2011).

There is one loose end. The defendant suggests that we can still consider his ineffective assistance of counsel claim in connection with his effort to vitiate the waiver-of-appeal provision. This suggestion lacks force.

When, as in this instance, the merits of an ineffective assistance of counsel claim cannot be adjudicated on the basis of the district court record, the law requires us to honor an otherwise enforceable waiver-of-appeal provision and dismiss the defendant's appeal. "If the rule were otherwise, a defendant who secured the benefits of a plea agreement by, inter alia, knowingly and voluntarily waiving the right to appeal could escape the fairly

_____

offer.

[4] We take no view of the merits of this claim, nor do we express an opinion as to whether a 96-month plea offer was ever discussed.

-10-

bargained-for appeal waiver by the simple expedient of asserting an ineffective-assistance-of-counsel claim that had no merit." <u>United States</u> v. <u>Oladimeji</u>, 463 F.3d 152, 155 (2d Cir. 2006) (quoting <u>United States</u> v. <u>Monzon</u>, 359 F.3d 110 (2d Cir. 2004)).

We need go no further. For the reasons elucidated above, we dismiss the defendant's appeal.

**<u>Dismissed</u>**.