**Glen RIVERA–ORTA, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civil No. 13–1953 (ADC) [Related to Crim. No. 07–547–14 (ADC) ]

United States District Court, D. Puerto Rico.

Signed 03/22/2017

Glen Rivera–Orta, Estill, SC, pro se.

Nelson J. Perez–Sosa, U.S. Attorney's Office, San Juan, PR, for Respondent.

## OPINION & ORDER

AIDA M. DELGADO–COLÓN, Chief United States District Judge

On June 28, 2011, petitioner Glen Rivera–Orta ("Rivera" or "petitioner") was convicted, after pleading guilty, of conspiracy to possess with intent to distribute cocaine within 1,000 feet of a protected location, 21 U.S.C. §§ 841(b)(1)(B), 846 and 860. *United States v. Glen Rivera–Orta*, Crim. No. 07–547–14 (ADC) (D.P.R. June 28, 2011), **ECF No. 4875**. Rivera was sentenced to 135 months in prison, to be followed by eight years of supervised release. *Id.* Rivera appealed his conviction, and the Court of Appeals for the First Circuit dismissed his appeal after validating the waiver-of-appeal provision of his plea agreement. *See United States v. Rivera–Orta*, 500 Fed.Appx. 1 (1st Cir. 2013).

Rivera now moves the Court to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. **ECF No. 1**. In his habeas petition, Rivera raises several issues in an attempt to challenge the voluntariness of his plea agreement. First, he alleges that his defense counsel provided ineffective assistance by urging him to sign the plea agreement without explaining its details or the consequences of pleading guilty. Second, he argues that he did not understand the contents of the plea agreement because the entire process was conducted in English, which he does not understand. Third, he claims that the Court threatened him with a harsher punishment if he did not accept the plea agreement. *See* **ECF No. 1–1** at 5–6.

In the petition, Rivera also challenges his sentence, arguing that there was no factual basis to impose the 2–point leader-

ship enhancement under § 3B1.1(b), or the 2–point dangerous weapon enhancement under § 2D1.1(b)(1). **ECF No. 1–1** at 5 and 7; *see* Presentence Investigation Report, Crim. No. 07–547–14 (ADC) (D.P.R. June 28, 2011), **ECF No. 4745** at 29. Rivera also moves the Court to hold an evidentiary hearing on the claims in the petition. **ECF No. 4**. The Government opposes the petition. **ECF No. 3.**

## I. Legal Standard

 A petitioner in federal custody may move to vacate, set aside, or correct his sentence by showing that his sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To warrant post-conviction relief, a petitioner must show that his sentence "reveal[s] fundamental defects which, if uncorrected, will result in a complete miscarriage of justice." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) (quotations, citation, and alterations omitted). Ultimately, "[t]he burden of proof is on the petitioner." *Wilder v. United States*, 806 F.3d 653, 658 (1st Cir. 2015) (citing *David*, 134 F.3d at 474).

 "[E]videntiary hearings on § 2255 petitions are the exception, not the norm." *DeCologero v. United States*, 802 F.3d 155, 167 (1st Cir. 2015) (quoting *Moreno–Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003)). And, a district court "is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *DeCologero*, 802 F.3d at 167 (quoting *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). Ultimately, "a hearing is unnecessary when the section 2255 motion (1) is inadequate on its face, or (2) although

facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." *McGill*, 11 F.3d at 225–26 (quotation and citation omitted).

In this case, the record of the trial-court proceedings—over which the undersigned presided—conclusively shows that petitioner is not entitled to habeas relief. Moreover, the record directly contradicts petitioner's claims for habeas relief. Thus, the Court denies petitioner's request for an evidentiary hearing and **DENIES** his habeas petition, **ECF No. 1**.

## II. Discussion

On January 10, 2011, petitioner was scheduled to go to trial, and the Jury was impaneled and sworn in. Crim. No. 07–547–14 (ADC) (D.P.R. June 28, 2011), **ECF No. 3862**. On January 11, 2011—the second day of trial—Rivera's attorney, Ernesto Hernández–Milán, informed the Court that Rivera wanted to accept a plea offer and requested a change of plea. *Id.*, **ECF No. 3867**. The Court granted the petition and held, on the same date, a change-of-plea hearing pursuant to Federal Rule of Criminal Procedure 11. *Id.*

During the change of plea hearing, a court interpreter assisted Rivera. *Id.*, **ECF No. 5109** at 5:24. Rivera testified that he had discussed the available evidence, as well as the plea agreement and the penalties to which he was exposed, with his counsel., *Id.* at 9:21. He specifically testified that his counsel had discussed the plea agreement with him in Spanish. *Id.* at 22:9. The Court then explained the crime to which he was pleading guilty and the specific circumstances of the offense, as well as the applicable statutory penalties and how the Sentencing Guidelines might affect his sentence. *Id.* at 10–11. Rivera testified that he understood the Court's explanations. *See id.*

Petitioner rests his habeas petition on an unusual situation that occurred during his change-of-plea hearing. While Assistant United States Attorney Olga Castellón proffered the evidence the Government would present if Rivera decided to go to trial, the Government informed the Court that a portion of the plea agreement's statement of facts had been stricken at Rivera's request. The stricken portion reflected that Rivera was the owner of a drug point and that he acted as a leader in the charged conspiracy. It also indicated that Rivera had used or had foreseen the use of a firearm in furtherance of the charged conspiracy. Because Rivera was concerned that a third party would access his trial record, he requested that the parties eliminate these statements from the statement of facts. The parties, including Rivera, initialed every page of the plea agreement and statement of facts, and crossed out and initialed two stricken paragraphs. *Id.*, **ECF No. 3865** at 11–12. Nonetheless, Rivera and his counsel agreed to the guideline calculation within the plea agreement that included adjustments for leadership role and foreseeable use of a weapon. **ECF No. 3865** at 5. However, the transcript of Rivera's change-of-plea hearing clearly shows that Rivera, during the Rule 11 colloquy unequivocally admitted to the facts that were stricken, and that those facts were incorporated into the plea agreement:

AUSA CASTELLON: As part of this plea agreement Your Honor, the defendant acknowledges that . . . . *it was foreseeable for him to possess, carry and brandish firearms . . . in order to protect the leaders and members of the drug trafficking organization, the narcotics and the proceeds of the drug sales.*

The United States also would have proven beyond a reasonable doubt that he acted upon the instructions given by the leaders of the organization and it was assigned for him to protect specific drug points. *He admits as part of the plea agreement, the plea agreement crossed out all what has been read by the government when it started that Mr. Rivera acted but the United States would have proven that he acted as a drug point owner. But I understand that what Mr. Hernandez stated that he is not accepting that for purposes of this plea agreement. But the government is laying out the foundation for what could have been the evidence against Mr. Rivera.*

MR. HERNANDEZ: What we are saying is that we are not accepting the version of the facts as it is written, because he does not want anyone at [Metropolitan Detention Center] to see that he accepted that.

THE COURT: That he accepted what?

MR. HERNANDEZ: The written version. But he accepts what she read here in court. As an acceptance he is saying that that would have been proven by the government, and that he was a drug point owner. But what he does not want is that anyone at MDC has access to that version of the facts and may point him out as he was accepting things that would harm him.

THE COURT: Okay, so I take it that just for the cosmetic purposes of the document filed in Court, in as much he understands that it may create a risk if the document ends up in the hands of third parties. That portion is being deleted. But so far and in these proceedings the defendant accepted while we were reading the judgment of the guidelines, the leadership role and he has been described by the government as a drug point owner.

MR. HERNANDEZ: Yes. And also the enhancement in relation to the firearms.

THE COURT: Yes, the foreseeability.

*Id.*, **ECF No. 5109** at 28:14

Thus, Rivera's counsel explained that Rivera was admitting as true, in open court, the portions of the statement of facts that had been crossed out. After the Government concluded its proffer of evidence, the Court asked Rivera if he understood the evidence that the Government had available. Rivera—who had been placed under oath at the beginning of the change-of-plea hearing—testified that he agreed that the proffer of evidence was accurate. *Id.* at 28:14. The Court then asked Rivera about the facts that the parties had crossed out from his plea agreement's statement of facts:

> THE COURT: And you admit [to] being a drug point owner and to be[ing] responsible for purchasing wholesale quantities of drugs that later on were distributed within the public housing project, within the drug points there. Is that correct?
>
> THE DEFENDANT: Correct.
>
> THE COURT: And that you were either personally responsible or [by] your instructions you were responsible for the preparation and packaging of the drugs to be sold at the distribution points?
>
> THE DEFENDANT: Correct.
>
> THE COURT: That includes either fixing or supervising that the specific labels and or packages of each specific drug sold was properly placed?
>
> THE DEFENDANT: Correct.
>
> THE COURT: And also you admit that you were responsible for the collection of the proceeds of the sales?
>
> THE DEFENDANT: Correct.
>
> THE COURT: Do you admit as well that you were [an] owner of the cocaine powder, crack and marijuana distribution within the Jardines de Selles and also [that] you had a role as an enforcer?
>
> THE DEFENDANT: Correct.

> THE COURT: And as an enforcer you possessed, carried, brandished or at times used or discharged weapons in order to either protect or promote the interest of the conspiracy?
>
> THE DEFENDANT: Correct.

*Id.* at 28:23.

A court "will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so." *United States v. Parrilla–Tirado*, 22 F.3d 368, 373 (1st Cir. 1994) (quoting *United States v. Pellerito*, 878 F.2d 1535, 1539 (1st Cir. 1989)). "The presumption of truthfulness of the [Rule 11 colloquy] statements will not be overcome unless the allegations in the Section 2255 motion … include credible, valid reasons why a departure from those earlier contradictory statements is now justified." *United States v. Butt*, 731 F2d. 75, 80 (1st Cir. 1984). "Ordinarily, a defendant is stuck with the representations that he himself makes in open court at the time of the plea. They are more likely to be reliable than later versions prompted by second thoughts, and guilty pleas often in the defendant's interest could hardly be managed any other way." *United States v Padilla–Galarza*, 351 F.3d 594, 598 (1st Cir. 2003); *see Sánchez–Cuprill v. United States*, 2016 WL 310895 at *5–6 (D.P.R. January 25, 2016).

Here, at no point during his change-of-plea hearing did Rivera stop the proceedings or voice disagreement with his defense attorney's representations or the Court's questions. Instead, he repeatedly testified that he understood the terms of the plea agreement, and that he was not being forced to plead guilty. He also testified that he was a drug-point owner and had possessed a weapon during the conspiracy. The Court specifically warned him that those facts were being accepted as true for purposes of his plea agreement,

even though they were crossed out in the plea agreement "for cosmetic purposes." Crim. No. 07–547–14 (ADC), **ECF No. 5109** at 28:14.

Rivera has failed to submit any evidence as to why the Court should now disregard the clear statements he made in open court. Instead, Rivera's habeas petition twists the record before the Court in an attempt to challenge facts that he admitted. Thus, there is ample evidence in the record to support the leadership and firearm enhancements to which Rivera explicitly agreed as part of his guilty plea.

■ Although Rivera primarily challenges his sentence, he also claims that he did not voluntarily plead guilty because: (1) his defense attorney gave ineffective assistance; (2) the Court threatened him with a harsher sentence if he did not plead guilty; and (3) he did not understand the proceedings conducted in the English language. *See* **ECF No. 1–1** at 5. The Court will address each argument in turn.

First, a court interpreter assisted Rivera at all stages during the proceedings. Rivera also testified that he understood the terms of the plea agreement, and that his counsel had discussed the plea agreement with him, in Spanish.

■ Second, Rivera has not shown that he received ineffective assistance of counsel. In the guilty-plea context, this means that Rivera has to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Moreno–Espada v. United States*, 666 F.3d 60, 64 (1st Cir. 2012) (quoting *United States v. Colón–Torres*, 382 F.3d 76, 86 (1st Cir.2004) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985))). Here, Rivera has made no such showing, nor has he even argued that he would have rejected the plea agreement and chosen to go to trial.

Finally, the Court was careful to ascertain that Rivera understood the terms of his plea agreement and was entering it voluntarily. At no point did the Court threaten Rivera with a harsher sentence if he rejected the plea agreement. Moreover, Rivera's petition waived this issue by raising it in a perfunctory manner, with no attempt to develop argumentation. *See Cody v. United States*, 249 F.3d 47, 53 n. 6 (1st Cir. 2001) (ineffective assistance of counsel claim raised in a perfunctory manner in section 2255 proceeding deemed waived); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (arguments not developed on appeal are deemed waived).

Thus, because the record before the Court—particularly Rivera's admissions during his change of plea hearing—conclusively refute the claims Rivera raises in is habeas petition, the habeas petition, **ECF No. 1**, is **DENIED WITH PREJUDICE.**

### III. Certificate of Appealability

■ Rule 11(a) of the Rules Governing § 2255 Proceedings provides that a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Here, because petitioner has not demonstrated that he was denied a constitutional right, the Court finds that petitioner is not entitled to a COA. Therefore, a COA is **DENIED.**

### IV. Conclusion

In light of the foregoing, petitioner's habeas petition, **ECF No. 1**, is **DENIED.**

The Clerk of the Court is to enter judgment accordingly.

**SO ORDERED.**